FILED
2006 Feb-06 PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL SMITH, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-04-CO-00734-S |
| | ] | |
| UNITED STATES OF AMERICA, | ] | |
| | ] | |
| Defendant(s). | ] | |

### Findings of Fact and Conclusions of Law

This case came before the Court for trial without a jury beginning on the 1st day of February 2006. The Court, having heard the testimony of the witnesses, received and reviewed all of the evidence, and having heard the arguments of the parties, makes the following findings of fact and conclusions of law:

### Findings of Facts

1. Plaintiff received injuries to his left arm when he fell on or about July 2, 2001.

2. He was initially treated in the Emergency Room of the Veteran's Administration Hospital ("VA") on July 2, 2001, by orthopaedic surgeon Lance Estrada.

3. The plaintiff suffered from a left posterior elbow dislocation with Type I coronoid fracture and small medial epicondyle fracture.

4. A closed reduction of the left elbow was performed on plaintiff's arm on July 2, 2001. The plaintiff contends that the reduction was not successful and that Dr. Estrada should have recognized this and taken further action to treat the plaintiff including taking further x-rays and performing other treatment up to and including surgery. This Court finds, however, that at the time the plaintiff left the VA on July 2, 2001, as well as on July 5, 2001, the elbow dislocation was successfully reduced. This is apparent from the x-rays taken on July 2, 2001, and July 5, 2001.

5. Plaintiff returned for a follow-up appointment on July 5, 2001.

6. Plaintiff was advised to return in two weeks for a range of motion check.

7. Plaintiff failed to return for his two week follow-up appointment. While the plaintiff testified that he returned several times complaining of pain and seeking additional medication, the Court is not satisfied that he returned to the VA prior to August 16, 2001.

8. When the plaintiff was examined on August 16, 2001, six weeks after his initial injury, it was discovered that he had a re-occurrent left posterior elbow dislocation. It is not clear from the evidence exactly when the elbow dislocation re-occurred, however it was sometime between July 5, 2001, and August 16, 2001.

9. An attempted closed reduction under general anesthesia, with likely open reduction and fixation with splinting to maintain the reduction, was recommended and scheduled for August 22, 2001.

10. On August 16, 2001, it was noted that the plaintiff demonstrated a 50% subluxation/dislocation of the left elbow and heterotopic calcification both posteriorly and anteriorly to the elbow joint.

11. The risks, benefits, and indications were discussed with the plaintiff and he agreed to proceed with the surgery.

12. On August 22, 2001, the plaintiff arrived for surgery, but had consumed four ounces of orange juice at 5:30 that morning, and the surgery was cancelled and rescheduled.

13. The plaintiff had the surgery as rescheduled on September 5, 2001, and was attended by Dr. Ekkehard Bonatz and Dr. Lance Estrada.

14. On September 5, 2001, a concentric reduction was accomplished.

## Conclusions of Law

Plaintiff Michael Smith filed suit against the defendant for medical malpractice arising under the Federal Tort Claims Act, 28 U.S.C. 2671, *et seq.* ("FTCA").  The FTCA specifically provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, *in the same manner and to the same extent as a private individual under like circumstances*, but shall not be liable for interest prior to judgment or for punitive damages."  28 U.S.C. § 2674 [emphasis added].  Twenty eight U.S.C. § 1346(b) further provides that a federal district court has exclusive jurisdiction on tort claims against the United States "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under*

*circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*" (Emphasis added.)

The substantive laws of the State of Alabama apply to Plaintiff's case because the alleged acts or omissions occurred in Alabama. This means that claims, defenses, and damages are governed by the substantive laws of Alabama. *See generally, Means v. United States*, 176 F. 3d 1376 (11th Cir. 1999); *Campbell v. United States*, 962 F. 2d 1579 (11th Cir. 1992); *Waffen v. United States*, 799 F. 2d 911 (4th Cir. 1986). Thus, in this case, the laws of Alabama apply to liability and damages, including Alabama's Medical Liability Act of 1987 (Ala. Code §§ 6-5-540 through 6-5-552) ("AMLA"). *See Suarez v. United States*, 22 F. 3d 1064, 1065 (11th Cir. 1994). This is true even though the United States cannot be subjected to the specific provisions of some state statutes.

Plaintiff's claims in this case arising out of his medical treatment are thus governed by the AMLA through the FTCA. The AMLA applies "[i]n any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care." §

6-5-548(a), Ala. Code 1975. The definition of "health-care provider" includes a "medical practitioner," that is, a medical doctor or osteopath licensed to practice in Alabama. §§ 6-5-542(1) and 6-5-481(1), Ala. Code 1975. *Mock v. Allen*, 783 So. 2d 828 (Ala. 2000). *See also Collins v. Ashurst*, 821 So. 2d 173 (Ala. 2001).

The AMLA clearly establishes the burdens of the plaintiff, who must prove by substantial evidence that the healthcare provider failed to exercise such reasonable care, skill, and diligence as other similarly situated healthcare providers in the same area of practice. § 6-5-548, Code of Alabama (1975), as amended. See also *Complete Family Care, P.C. v. Sprinkle*, 638 So. 2d 774, 777 (Ala. 1994). Further, the Plaintiff must also establish by substantial evidence that this alleged failure or breach of the standard of care *probably* caused the injury in question. § 6-5-559, Code of Alabama (1975); *McAfee v. Baptist Medical Ctr.*, 641 So. 2d 265, 267 (Ala. 1994). To satisfy the substantial evidence test, the Plaintiff must present "evidence of such weight and quality that fair minded persons in the exercise of impartial judgment can reasonably infer the existence of the

facts sought to be proved." *West v. Founders Life Assur. Co.*, 547 So. 2d 870, 871 (Ala. 1989).

Under the AMLA, Plaintiff must demonstrate: (1) the appropriate standard of care; (2) that the VA breached the appropriate medical standard of care in treating plaintiff; and (3) a proximate causal connection between the VA's care and treatment of plaintiff and any alleged injuries sustained by him. See *Hauseman v. University of Alabama Health Services Foundation*, 793 So. 2d 730 (Ala. 2000); Ala. Code § 6-5-484.

Plaintiff failed to meet his burden of proof in this case because he failed to demonstrate from the testimony and other evidence that the VA failed to meet the standard of care in its treatment of the Plaintiff. Further, Plaintiff failed to demonstrate that the VA's treatment of him probably caused any of his injuries.

Wherefore, considering all of the trial evidence and testimony, the court finds in favor of the defendant. A separate Order implementing the above findings and conclusions will be entered.

Done this <u>6th</u> day of <u>February 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153